[No. G040091. Fourth Dist., Div. Three. Aug. 22, 2008.]

ALAN MARC FREEDMAN, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
STEVEN CHARBONNEAU, Real Party in Interest.

**COUNSEL**

LaFollette, Johnson, De Haas, Fesler & Ames, Dennis K. Ames, Wendy E. Coulston; Cole Pedroza, Kenneth R. Pedroza and Matthew S. Levinson for Petitioner.

No appearance for Respondent.

Hodes, Milman, Daniel M. Hodes; and Donna Bader for Real Party in Interest.

## OPINION

**IKOLA, J.**—Petitioner Alan Marc Freedman, M.D. (hereafter defendant), seeks a writ of mandate ordering the trial court to vacate its order granting real party in interest Steven Charbonneau's (hereafter plaintiff) motion to amend his medical malpractice complaint to add a punitive damages claim. (See Code Civ. Proc., § 425.13, subd. (a) (section 425.13(a)).)[1] The court excused plaintiff from the statutory deadline requiring him to file his motion no later than nine months before the first scheduled trial date. It did so pursuant to the five-part test set forth in *Goodstein v. Superior Court* (1996) 42 Cal.App.4th 1635 [50 Cal.Rptr.2d 459] (*Goodstein*). And the court eliminated any prejudice to defendant by continuing the trial date and extending the discovery cutoff to provide ample opportunity for additional discovery and a summary judgment motion.

■   Despite this facially reasonable ruling, we are compelled to set the ruling aside in deference to the deadline established by the Legislature. Even if we apply *Goodstein* here, plaintiff failed to meet two of its prongs. Plaintiff knew sufficient facts to file the motion before the statutory deadline. And to the extent plaintiff desired additional evidence, he did not conduct reasonably diligent discovery before the deadline. Writ relief is warranted.

## FACTS

Plaintiff had a cancerous tumor on one of his kidneys. He consented to surgery, including removal of the entire kidney if necessary. Defendant performed the surgery on December 5, 2005, removing the tumor and leaving the kidney in place. After the operation, plaintiff suffered pain and unexpectedly high urine output through a surgically inserted drain. Defendant concluded plaintiff's ureter was obstructed, preventing urine from flowing normally from the kidney to the bladder.

---

[1] All further statutory references are to the Code of Civil Procedure. Section 425.13(a) provides: "In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code. The court shall not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed within two years after the complaint or initial pleading is filed or not less than nine months before the date the matter is first set for trial, whichever is earlier."

Plaintiff consented to defendant placing a stent between the kidney and the bladder on December 20, 2005. Plaintiff was placed under general anesthetic as defendant inserted a scope to visualize the ureter. The ureter was completely blocked, preventing stent placement. As plaintiff lay in the recovery room, defendant obtained consent from plaintiff's next of kin to perform exploratory surgery.

While performing the exploratory surgery, defendant discovered a surgical towel in plaintiff's abdomen. The towel was compressing the ureter. Defendant could not reopen the compressed ureter or insert a stent. He removed plaintiff's kidney.

After the operation, defendant told plaintiff and his family about removing the kidney, but not about the surgical towel. Defendant spoke again with plaintiff the next morning, still without mentioning the towel. Defendant then discussed the matter with the hospital's risk manager. Immediately after their discussion, defendant and the risk manager met with plaintiff and his family to tell them about the towel.

Plaintiff, represented by lawyer James Daily, filed his complaint on November 28, 2006. He asserted causes of action against defendant and others for professional negligence, battery, and fraudulent concealment. He alleged defendant acted with malice, oppression, and fraud, but did not assert a claim for punitive damages.

The court held a case management conference on March 15, 2007, at which it set a trial date of February 11, 2008. The last date for plaintiff to timely move for leave to add a punitive damages claim was thus May 11, 2007. (§ 425.13(a).) The record does not suggest plaintiff objected to the trial date.

The record shows no discovery by plaintiff over the next few months. In March, the court sustained defendant's demurrer to the first amended complaint with leave to amend. Plaintiff filed a second amended complaint, without a punitive damages claim. On April 24, 2007, Daily moved to be relieved as plaintiff's counsel. On May 8, Daily wrote to defendant's counsel to confirm a continuance of the hearing on defendant's demurrer to the second amended complaint and a continuance of plaintiff's deposition.

Daily continued representing plaintiff as of May 11, 2007—the nine-month deadline. The record lacks any evidence he had propounded any written

discovery or deposed any witnesses on plaintiff's behalf by that date. He did not file a motion for leave to amend to add a punitive damages claim.

In late May 2007, plaintiff substituted in Daniel M. Hodes as his counsel. On May 30, Hodes noticed defendant's deposition for June 14. After discussion between counsel, the deposition was continued to a mutually convenient date in October 2007. Hodes deposed a codefendant, Dr. Reed, on November 12, 2007. Reed signed his deposition transcript on December 12, 2007.

Plaintiff filed a motion for leave to amend the complaint to add a punitive damages claim on December 19, 2007. He asserted defendant acted with malice, oppression, or fraud by (1) concealing the discovery of the surgical towel until the day after the exploratory surgery, and (2) removing the kidney without obtaining consent from plaintiff or his next of kin before or during the exploratory surgery. Defendant contended the motion was untimely and lacked merit.

The court granted the motion and continued the trial date to September 8, 2008. Defendant filed a petition for an extraordinary writ, which we denied. The California Supreme Court granted defendant's petition for review, transferred the matter to this court, and directed us to vacate our prior order and issue an order to show cause, which we have done.

## DISCUSSION

Section 425.13(a) bars a plaintiff from filing a complaint containing a punitive damages claim based upon a health care provider's professional negligence. It protects against the "routine inclusion of sham punitive damage claims in medical malpractice actions. It apparently seeks to alleviate this problem by shifting to the plaintiff the procedural burden that would otherwise fall on the defendant to remove a 'frivolous' or 'unsubstantiated' claim early in the suit." (*Goodstein, supra*, 42 Cal.App.4th at pp. 1641–1642.) To assert a punitive damages claim based on medical malpractice, the plaintiff must file a motion for leave to amend the complaint and show a substantial probability of prevailing on the punitive damages claim. (§ 425.13(a).)

Section 425.13(a) imposes a strict deadline upon plaintiffs. Any motion for leave to amend must be "filed within two years after the complaint or initial pleading is filed or not less than nine months before the date the matter is first set for trial, whichever is earlier." (§ 425.13(a).) " '[F]rom the language used in the statute, we can reasonably infer that the Legislature

provided the nine months prior to trial limitation for at least two important reasons: (1) to provide a health care defendant with adequate notice of the claim and an ample period to conduct appropriate discovery and (2) to prevent the "last minute" insertion of a punitive damages claim into a case that has been prepared for trial without consideration of that issue. The adverse impact of such a tardy assertion on both trial preparation and settlement negotiations is obvious.' " (*Goodstein, supra,* 42 Cal.App.4th at p. 1642.)

*Goodstein* crafted a narrow exception to the statutory deadline. There, due to "fast track" rules, trial was set at a status conference for a date less than nine months away. (*Goodstein, supra,* 42 Cal.App.4th at p. 1639.) The plaintiff conducted discovery and filed a section 425.13 motion, which was denied as untimely. (42 Cal.App.4th at p. 1640.) The *Goodstein* court issued a writ directing the trial court to vacate its order. (*Id.* at p. 1646.) It explained, "If in fact a plaintiff, by virtue of the quick trial setting practices of 'fast track' courts, is placed in a position where she cannot reasonably comply with the narrow time limits set out in section 425.13, then surely the court must retain the inherent power and authority to make an appropriate order to avoid injustice or unfairness." (*Id.* at p. 1645.)

The plaintiff "bears a heavy burden" to be excused from the statutory deadline, *Goodstein* explained. (*Goodstein, supra,* 42 Cal.App.4th at p. 1645.) "Relief from the time limits specified in section 425.13 should be granted only in those situations where a plaintiff has moved with reasonable dispatch and diligence and, through no fault of his or her own, has been placed in a position where compliance with the nine-month time mandate is impossible or reasonably impracticable." (*Ibid.*)

*Goodstein* set forth a five-part test that, "[i]n the context of the factual circumstances presented by this case," the plaintiff must satisfy to obtain relief. (*Goodstein, supra,* 42 Cal.App.4th at p. 1645.) The plaintiff "must be able to show . . . (1) she was unaware of the facts or evidence necessary to make a proper motion under section 425.13 more than nine months prior to the first assigned trial date, (2) she made diligent, reasonable and good faith efforts to discover the necessary facts or evidence to support such a motion more than nine months prior to the first assigned trial date, (3) after assignment of the trial date she made reasonable, diligent and good faith efforts to complete the necessary discovery, (4) she filed her motion under section 425.13 as soon as reasonably practicable after completing such discovery (but in no event more than two years after the filing of her initial complaint) *and* (5) [the defendant] will suffer no surprise or prejudice by

reason of any shortened time period and will be given every reasonable opportunity to complete all necessary discovery in order to prepare to meet [the plaintiff's] punitive damage allegations." (*Ibid.*)

*Goodstein* remanded the case for the trial court to "make specific findings on each of the five criteria specified above. Only in the event that [the plaintiff] can satisfy them all, by a preponderance of the evidence, will it be proper for the court to grant her motion to amend." (*Goodstein, supra,* 42 Cal.App.4th at pp. 1645–1646.)

The parties agree *Goodstein* is generally good law. Defendant does not dispute *Goodstein* carved out an exception to the statutory deadline. Plaintiff does not dispute that, to avail himself of this excuse, he must satisfy each one of the five *Goodstein* factors. They dispute only whether plaintiff has done so.

We accept *Goodstein*'s holding, but wonder whether it governs this case. In *Goodstein*, trial was set for a date less than nine months away, precluding compliance with the statutory deadline once the trial date was set. (*Goodstein, supra,* 42 Cal.App.4th at p. 1639.) The court excused the plaintiff's failure to object to the early trial date only because it was set by a court clerk presiding over a status conference—an anomalous situation in which any objection likely would have been futile. (*Id.* at pp. 1639, 1644.) *Goodstein* acknowledged the "considerable merit to [the] argument" that, in normal circumstances, a plaintiff must "advise the court *at the trial setting conference* of her need for enough time prior to trial to enable her to comply with section 425.13 . . . ." (*Ibid.*)

Plaintiff faced none of the obstacles encountered by the *Goodstein* plaintiff. Nothing suggests anyone but the judge presided over the March 15, 2007 case management conference and set the trial date. The record contains no indication plaintiff objected to the trial date, requested a later trial date, or in any way acknowledged the looming statutory deadline. Nor does it point toward anything excusing plaintiff's failure to do so. Moreover, the court set a trial date of February 11, 2008, giving plaintiff nearly two full months to file a motion before the nine-month deadline. Unlike *Goodstein*, this is not a case where plaintiff "through no fault of his . . . own, has been placed in a position where compliance with the nine-month time mandate is impossible or reasonably impracticable." (*Goodstein, supra,* 42 Cal.App.4th at p. 1645.) Plaintiff could have filed a timely motion. He simply did not.[2]

---

[2] We do not suggest the failure to file a timely motion was necessarily negligent. Counsel may well have concluded that the facts did not lend themselves to a successful punitive damages claim, an issue we do not reach.

Even if *Goodstein* applied here, plaintiff failed to satisfy its five-part test. *Goodstein* stressed the trial court had to "make specific findings on *each* of [its] five criteria" (*Goodstein, supra*, 42 Cal.App.4th at p. 1645, italics added) and should grant leave to amend "[o]nly in the event that [the plaintiff] can satisfy them *all* . . ." (*id.* at pp. 1645–1646, italics added). Instead of considering each factor, the court honed in on Hodes's discovery efforts, stating, "I'm focusing on what reasonable efforts were made after May of '07 to allow plaintiff to reasonably comply with these time limits and what was happening during that period of time," and concluding, "I do believe Mr. Hodes was acting in good faith in efforts to complete discovery." But Hodes substituted in as plaintiff's counsel *after* the May 11, 2007 deadline had already passed. The court also observed, "I don't think there's going to be any prejudice to the defendant in this case based upon the delay because I'm going to take efforts to correct that by continuing the trial date, thereby continuing all the summary judgment and discovery cutoff dates due to allow discovery." These observations appear well founded.

Nonetheless, the *Goodstein* analysis should start with its first prong. *Goodstein* requires plaintiff to have been "unaware of the facts or evidence" needed to file a motion for leave to amend before the nine-month deadline. (*Goodstein, supra*, 42 Cal.App.4th at p. 1645.) Here, plaintiff knew most of the facts offered in support of his motion before he filed the complaint.

Defendant disclosed most of the material facts to plaintiff the day after the exploratory surgery. That is when plaintiff learned defendant had left the surgical towel in him during the tumor removal, discovered the towel while removing his kidney (purportedly without his consent), and failed to disclose its existence until the next day. Plaintiff claims he lacked the following evidence until defendant's deposition: Defendant used a nonradiopaque towel (invisible to X-rays) in violation of hospital policy, omitted the towel from the initial operative report, delayed disclosing the towel to plaintiff because he wanted to review hospital policy with the risk manager, spoke to the risk manager before preparing an amended operative report and informing plaintiff of the towel, and had an opportunity during the exploratory surgery to seek consent from plaintiff's next of kin to remove the kidney. Plaintiff further claims he did not know until Reed's deposition that Reed thought defendant concealed the towel by omitting it from the operative report (Reed disputes plaintiff's characterization of his deposition testimony). This evidence adds little to what plaintiff already knew. We do not express an opinion on whether plaintiff actually showed a substantial probability of prevailing on his punitive damages claim. We note only that the motion's merits depend

largely on facts plaintiff already knew at the outset of the case—leaving the towel in plaintiff's abdomen, not discovering the towel until exploratory surgery was performed, failing to disclose the towel's discovery immediately, and failing to obtain consent for the kidney removal—not on evidence discovered after the statutory deadline.

Plaintiff also failed to meet the second *Goodstein* factor. *Goodstein* requires plaintiff to make "diligent, reasonable and good faith efforts to discover the necessary facts or evidence to support such a motion more than nine months prior to the first assigned trial date . . . ." (*Goodstein, supra*, 42 Cal.App.4th at p. 1645.) Whatever evidence plaintiff desired to support his motion, he failed to conduct reasonably diligent discovery to uncover it. The record lacks any hint plaintiff propounded written discovery or noticed depositions before the nine-month deadline, even after the trial date was set.[3] *Goodstein* excuses plaintiffs who act with "reasonable dispatch and diligence," not those who commence discovery after the statutory deadline has passed. (*Ibid.*)

The court's decision to allow leave to amend and continue the trial date appears reasonable. But section 425.13(a) demands strict adherence to the Legislature's chosen deadline. It may have been better had the Legislature left case management decisions to the sound discretion of trial judges, who are in the best position to weigh the competing interests and circumstances in particular cases. Bright-line statutory rules governing the timing nuts and bolts of the trial court's management of a case, without at least providing exceptions for good cause, have the potential to impair the fair administration of justice. But trial judges are nonetheless obliged to follow the rules established by the Legislature, even if doing so does not always advance a fair resolution of the case.

*Goodstein* recognized a narrow exception to the statute. But *Goodstein* excuses only those plaintiffs who meet all five of its factors. Plaintiff's postdeadline discovery efforts alone do not relieve him from the statutory deadline, even in the absence of prejudice to defendant.

---

[3] Plaintiff stresses the case was not at issue until defendant and Reed answered the second amended complaint in July 2007. But plaintiff could have conducted discovery before then. Plaintiff could have served interrogatories and document requests on defendant 10 days after he was served with the summons. (§§ 2030.020, subd. (b), 2031.020, subd. (b).) Plaintiff could have served deposition notices 20 days after any defendant was served with a summons. (§ 2025.210, subd. (b).)

## DISPOSITION

The petition is granted. Let a peremptory writ issue directing the court to vacate its order granting plaintiff's motion for leave to amend his complaint and enter a new order denying plaintiff's motion. Defendant shall recover his costs incurred in connection with this writ proceeding. In the interests of justice, this decision is final in this court 10 days after its filing. (Cal. Rules of Court, rule 8.264(b)(3).)

Sills, P. J., and Fybel, J., concurred.