[No. B080497. Second Dist., Div. Two. July 26, 1994.]

R. CLARK DAVIS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CARLOS FUENTES, Real Party in Interest.

624

**COUNSEL**

Schmid, Norek & Voiles, Douglas B. Voiles and Christopher L. Smith for Petitioner.

Horvitz & Levy, David S. Ettinger and Julie L. Woods as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

David H. Loomis for Real Party in Interest.

**OPINION**

**FUKUTO, J.**—Petitioner, R. Clark Davis (Davis), seeks a writ of mandate directing the superior court to set aside an order denying his motion to strike that portion of real party in interest's complaint praying for punitive damages.

Real party, Carlos Fuentes, sued three physicians, including Davis, all of whom treated him after he was injured during the course and scope of his employment. Also named as a defendant was Republic Indemnity Company of America (Republic), real party's employer's workers' compensation carrier.

As against Davis, real party set forth a medical malpractice count, and sought punitive damages based on Davis's alleged involvement in a fraudulent scheme to deprive real party of his workers' compensation benefits.

In his amended complaint, real party alleges he was injured when the "jagged edge of a board" pierced and severely lacerated the palm of his right hand and the "center volar aspect of his wrist." His employer sent him to Richard German (German), a physician selected by Republic. Republic knew German was not competent to treat the type of injury suffered by real party, as did German. Nonetheless, German cut and sutured real party's hand, leaving a "two inch wooden stick" embedded therein. He then sent real party back to work without any restriction.

In response to his many complaints about continuing pain, Republic sent real party to Raymond Takahashi (Takahashi) who removed the stick left in

real party's hand by German. Takahashi, in order to conceal German's negligence, told real party he had found nothing in his hand.

Later, upon reading a pathology report, real party learned of Takahashi's misrepresentation, and insisted that Republic provide him with a doctor of his own choosing. Instead, Republic sent him to Davis, who misrepresented his competency and status as a hand injury specialist. After examining real party's hand, Davis prepared a report for the benefit of Republic wherein he "referred to the jagged board that pierced [real party's] hand as a 'splinter.' " Davis also misrepresented real party's subjective complaints of disability, that further treatment was not indicated, and that real party's condition probably would resolve over time. When real party again asked to be referred to a physician of his own choosing, Davis, Takahashi and Republic refused, saying there was nothing wrong with real party's hand.

Real party alleges he became the victim of a conspiracy concocted by Republic designed to defraud workers' compensation claimants of their benefits. In furtherance of the conspiracy, Republic required all of its employer insureds to retain the services of physicians selected by Republic. These doctors, including Davis, German and Takahashi, all knew they would not continue to receive patients from Republic unless they agreed to provide medical treatment and advice falling well below the standard in the community. Davis participated in the conspiracy by taking direction for treatment of real party from Republic, lied to real party about his medical condition, and falsified reports in order to cover up the dishonesty and/or incompetence of German and Takahashi. These acts were designed to curtail expensive treatment needed by real party, to prevent him from suing Davis's codefendants, and to ensure that Davis would continue to get business from Republic.

Davis, relying on *Central Pathology Service Medical Clinic, Inc.* v. *Superior Court* (1992) 3 Cal.4th 181 [10 Cal.Rptr.2d 208, 832 P.2d 924] (*Central Pathology*), moved to strike real party's prayer for punitive damages for his failure to comply with the requirements of Code of Civil Procedure section 425.13, subdivision (a) (section 425.13(a)).[1]

The motion was denied on the basis that real party's fraud and conspiracy counts did not fall within the ambit of the statute. This petition for writ of mandate followed.

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Section 425.13(a) provides in pertinent part that "[i]n any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits

 Davis contends that the conduct of which he is accused arose out of his professional negligence as a health care provider, and that real party was, therefore, required to comply with the requirements of section 425.13(a).

Real party insists that his claim is removed from the requirements of the statute because he seeks damages based on criminal conduct—conduct which cannot be considered to have arisen out of Davis's professional negligence.

*Central Pathology* is dispositive of this case. There, a patient sued a physician and a laboratory, alleging they failed to notify her she was developing cancer when a pap smear the physician performed and sent to the laboratory for analysis revealed the presence of abnormal cells. The plaintiff sought punitive damages based on allegations of fraud, i.e., that the laboratory intentionally failed to notify her she should be retested even though it had been ordered to retest all persons tested in the previous five years, and the physician denied using that laboratory in an effort to cover up her medical malpractice.

When plaintiff moved to amend the complaint, the defendant physician opposed, asserting her failure to comply with section 425.13(a). Plaintiff argued this section did not apply to the proposed intentional tort amendments. Ultimately, our Supreme Court held that it did, explaining that the fraud count was "directly related to the manner in which defendant[] provided professional services," because "[t]he claim emanate[d] from the manner in which defendant[] performed and communicated the results of medical tests, a matter that is an ordinary and usual part of medical professional services." (*Central Pathology, supra,* 3 Cal.4th at pp. 192-193.)

In reaching this conclusion, the court warned that merely "identifying a cause of action as an 'intentional tort' as opposed to 'negligence' does not itself remove the claim from the requirements of section 425.13(a)." (*Central Pathology, supra,* 3 Cal.4th at p. 192.) What is required is an examination of the "allegations that identify the nature and cause of a plaintiff's injury . . . to determine whether each is directly related to the manner in which professional services were provided. Thus, a cause of action against a health care provider for battery predicated on treatment exceeding or different from that to which a plaintiff consented is governed by section 425.13 because the injury arose out of the manner in which professional services are provided. By contrast, a cause of action against a health care provider for sexual battery would not, in most instances, fall within the statute because the

presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code."

defendant's conduct would not be directly related to the manner in which professional services were rendered. [Citation.]" (*Ibid.*)

Real party claims that Davis's conduct cannot be considered to be directly related to the manner in which he rendered professional services. According to real party, when Davis examined his hand and falsified his findings, he was participating in a "premeditated confidence game" for the improper purpose of enriching himself at the expense of a workers' compensation claimant. Real party argues that a claim emanating from such activity cannot be considered an "ordinary and usual part of medical professional services" as that phrase is used in *Central Pathology*, and that section 425.13(a) is, therefore, inapplicable.[2] Only two factors distinguish Davis's conduct from the conduct of the *Central Pathology* physician. Here, it is alleged the misrepresentations began prior to the time real party was referred to Davis and his coconspirators for treatment, while in *Central Pathology* the misrepresentation is alleged to have occurred after the plaintiff was treated by the defendant physician. The second distinguishing factor focuses upon the status of the suing patient and Davis's motive for engaging in the conspiracy. Unlike the plaintiff in *Central Pathology*, real party here is a member of a class of injured workers mistreated by physicians, including Davis, for the improper purpose of enriching themselves and protecting the financial interests of a workers' compensation carrier.

These distinctions in no way convince us that section 425.13(a) is inapplicable to the facts of this case. What *Central Pathology* and this case have in common is that each of the physicians was charged with unprofessional, unethical and possibly illegal conduct. Real party appears to suggest that we distinguish this case by focusing on the motivation underlying the physicians' conduct. If they are motivated by a desire to avoid a costly civil suit at the expense of a single patient as in *Central Pathology*, section 425.13(a) applies. If, however, the physician is motivated by greed at the expense of a class of injured workers, a violation of an important public policy has occurred and the injured patient need not comply with the statute.

Such an approach is unworkable. ■ As a preliminary matter, it is difficult to conceive of conduct in which a physician might engage and for which punitive damages could be awarded which would not be violative of an important public policy. Under *Central Pathology*, the significant factor is

---

[2]Real party candidly admits his reliance upon the reasoning set forth in *Krieger* v. *Superior Court* (Feb. 25, 1993) B071932 (nonpub. opn.), which the Supreme Court directed not to be published on May 27, 1993. Of course, pursuant to California Rules of Court, rule 977, an unpublished opinion "shall not be cited or relied on by a court or a party in any other action or proceeding" unless it falls within certain exceptions not relevant here.

not what motivated the physician to engage in the unethical, unprofessional or illegal conduct, or when he or she concocted the fraudulent scheme or made the misrepresentations. The focus is on the physician's conduct. Our inquiry begins with whether the doctor accused of the improper behavior was engaged in the practice of medicine at the time he or she was consulted by the patient. If so, we next examine the physician's activity. If the acts performed were those in which a medical practitioner ordinarily would be expected to perform in his or her capacity as a health care provider, we then examine the misrepresentation allegedly made. If it relates to the acts performed by the physician in his or her capacity as a health care provider, as a matter of law the misrepresentation occurred during the rendition of medical services and section 425.13(a) applies.

Here, Davis is accused of misrepresenting that he would properly treat real party, and that he was qualified to perform certain medical procedures. It is also alleged he lied about real party's medical condition and falsified his findings. Even if, as real party alleges, Republic directed Davis to conduct himself in this manner, the fact remains that real party is seeking damages for an injury that is directly related to the professional services rendered by Davis acting in his capacity as a health care provider. The conduct of which Davis is accused, if true, is unethical, illegal and immoral. It is, however, no more outrageous than the conduct of the *Central Pathology* defendant physician. Real party was, therefore, required to comply with the requirements of section 425.13(a).

Real party also contends that even if we conclude that the activity in which Davis engaged arose out of his professional negligence, we should, nonetheless, carve an exception to section 425.13(a) because the patient injured by Davis's fraud is alleged to be a workers' compensation claimant. His theory is that the state has an overwhelming interest in protecting injured workers, and that allowing the pursuit of punitive damages without having to comply with the restrictions set forth in section 425.13(a) would help root out fraudulent schemes such as the one herein alleged—schemes which, potentially, could undermine the system itself. Section 425.13(a) does not provide an exception for allegations of conspiratorial conduct, or for actions against health care practitioners who provide services under the workers' compensation system. Instead, it applies without distinction to *all* actions arising from the professional negligence of a health care provider.

Real party also mounts an attack on the workers' compensation system. He claims the typical injuries in the system are so small that, without a punitive damages claim, an attorney would have no financial incentive to prosecute the action. Of course, punitive damages are intended to punish the

defendant and deter future conduct, not to establish a compensation system for attorneys.

Real party's arguments can properly be addressed only to the Legislature. Consistent with the principles set forth in *Central Pathology*, we hold that where, as here, a conspiracy to commit fraud cause of action is directly related to the manner in which a health practitioner provides professional services, the suing patient is required to comply with the requirements of section 425.13(a).

Accordingly, the superior court is directed to set aside its order denying petitioner's motion to strike that portion of real party's complaint praying for punitive damages, and to enter a new and different order granting the motion.[3] The temporary stay imposed on March 30, 1994, is vacated.

Gates, Acting P. J., and Nott, J., concurred.

---

[3]Thereafter, as petitioner conceded at oral argument, real party may file a motion pursuant to section 425.13(a).