[No. C052530. Third Dist. Apr. 4, 2008.]

MELISSA PRINCE et al., Plaintiffs and Appellants, v.
SUTTER HEALTH CENTRAL et al., Defendants and Respondents.

972

COUNSEL

Gwilliam, Ivary, Chiosso, Cavalli & Brewer, Steven J. Brewer, Monique G. Morales; Jeffrey L. Jacobs; and Daniel U. Smith for Plaintiffs and Appellants.

Lanius & Associates, Patrick A. Lanius; Greines, Martin, Stein & Richland, Martin Stein and Barbara S. Perry for Defendants and Respondents.

OPINION

**MORRISON, J.**—We hold that an unlicensed social worker, registered with the appropriate agency and working toward licensure, is a "health care provider" rendering "professional services" under the Medical Injury Compensation Reform Act of 1975 (MICRA).

## BACKGROUND

Plaintiffs are the widow and daughters of decedent James Prince, who killed himself after his release from a medical facility. They sued two sets of defendants for improperly releasing decedent. Decedent had health coverage with the first group (Kaiser). Kaiser subcontracted mental health services to Sutter Health Central, which employed Juliet Stevenson, who allegedly made the decision to release decedent (Sutter, except as context indicates).

Plaintiffs settled with Kaiser for their economic damages and for the maximum $250,000 in noneconomic damages permitted by MICRA. They continued the suit against Sutter, claiming that Stevenson's acts did not fall under MICRA and therefore they could recover further noneconomic damages from Stevenson and her employer, Sutter.

Plaintiffs moved for summary adjudication of the MICRA issue and the trial court ruled against them. After plaintiffs conceded that the MICRA issue would dispose of their remaining claims, the trial court granted Sutter's motion for summary judgment. Plaintiffs timely appealed from the ensuing judgment.

## STANDARD OF REVIEW

We review summary judgments de novo. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) We dispense with the usual three-step method of review in this case.

## DISCUSSION

 "MICRA was designed to reduce tort compensation for medical malpractice by erecting a framework to assure medical quality (thereby reducing the number of potential lawsuits), by imposing various restrictions upon those actions which are nevertheless pursued, and by establishing procedures for protesting insurance premium rates. [Citation.] As to medical malpractice actions, the reforms were designed to accomplish two goals: (1) to expedite identification and resolution of claims; and (2) to make amounts and payment of compensation awards more economically manageable." (*Kelemen v. Superior Court* (1982) 136 Cal.App.3d 861, 866 [186 Cal.Rptr. 566].)

Civil Code section 3333.2, subdivisions (a) and (b), part of MICRA, provide that, "In any action for injury against a health care provider based on professional negligence" the injured party can recover noneconomic losses up to $250,000.

Under several MICRA provisions, " 'Health care provider' means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code." (Civ. Code, § 3333.2, subd. (c)(1) [damages cap]; Code Civ. Proc., § 340.5, subd. (1) [statute of limitations]; see *Coe v. Superior Court* (1990) 220 Cal.App.3d 48, 50 [269 Cal.Rptr. 368].) " 'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, . . . provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (Civ. Code, § 3333.2, subd. (c)(2).)

 Business and Professions Code, division 2, "Healing Arts," covers several professions. The "Clinical Social Worker Practice Act," chapter 14, is administered by the Board of Behavioral Sciences (Board). (*Id.*, §§ 4990, 4990.12, 4991.) Article 4 thereof covers "Licensure." (*Id.*, § 4996 et seq.)

The Board licenses applicants after a test, but before sitting for the test, an applicant must have a master's degree in social work, and complete training, including defined "supervised" experience. (Bus. & Prof. Code, §§ 4996.1, 4996.2, subds. (b), (c), 4996.20.) "A person who wishes to be credited with experience toward licensure requirements shall register with the board as an associate clinical social worker prior to obtaining that experience." (*Id.*, § 4996.18, subd. (a).)

The parties agree that Stevenson was "registered" with the Board. But does that equate to being "licensed or certified" under MICRA? (Civ. Code, § 3333.2, subd. (c)(1).)

The answer is yes for two reasons.

First, Business and Professions Code section 23.7, not cited by the parties, states "Unless otherwise expressly provided, 'license' means license, certificate, *registration*, or other means to engage in a business or profession regulated by this code or referred to in Section 1000 or 3600." (Italics added.) Stevenson's profession is regulated by that code, and she registered with the Board. In effect, she was licensed.

Second, after the initial briefing was complete, a new MICRA decision was issued, *Chosak v. Alameda County Medical Center* (2007) 153 Cal.App.4th 549 [63 Cal.Rptr.3d 184] (*Chosak*). In their supplemental brief and at oral argument plaintiffs concede *Chosak* reached a legally correct conclusion, although they dispute whether its holding disposes of this lawsuit, for reasons we address later. First, for context, we briefly discuss *Chosak*'s holding.

*Chosak, supra,* 153 Cal.App.4th 549, involved the timeliness of a suit against an optometry student. The MICRA statute of limitations, as indicated above, uses the same definition of "health care provider" as the damages cap. (Compare Code Civ. Proc., § 340.5, subd. (1), with Civ. Code, § 3333.2, subd. (c)(1).)

*Chosak, supra,* 153 Cal.App.4th 549, concluded that the term "licensed or certified" was ambiguous, that is, susceptible of two readings, each of which plausibly accounted for the grammar employed by the Legislature. (See *Estate of Dye* (2001) 92 Cal.App.4th 966, 976 [112 Cal.Rptr.2d 362]; *Zabetian v. Medical Board* (2000) 80 Cal.App.4th 462, 466–467 [94 Cal.Rptr.2d 917].)

■ "[T]he plain meaning . . . could refer not only to the granting of a license or certificate but also more generally to the granting of legal authorization to practice medicine. Either definition is equally consonant with the nature and purpose of the statutes. The MICRA statutes that include this definition, among them section 340.5, are intended to apply generally to medical malpractice actions. *The negligence of all persons legally authorized to practice medicine is equally medical malpractice, whether those persons practice under a license or certificate or under an exemption from the licensing and certification requirements.*" (*Chosak, supra,* 153 Cal.App.4th at p. 562, italics added.)

We disagree with *Chosak*'s view that both possible readings stand in equipoise: The broader reading better furthers MICRA policies for the reason stated at the end of the passage: "The negligence of all persons legally authorized to practice medicine is equally medical malpractice . . . ." (*Chosak, supra,* 153 Cal.App.4th at p. 562.) In any event, *Chosak* then employed

interpretive tools to determine which of the two plausible readings of the statute governed the case and concluded the broader interpretation of who is covered by MICRA was correct. (153 Cal.App.4th at pp. 565–567.)

We agree with *Chosak*'s holding, as do plaintiffs. MICRA's purpose would be frustrated by eliminating its protections from persons, such as Stevenson, lawfully practicing a healing art as part of their training to become licensed. Plaintiffs' reliance on cases emphasizing the importance of licensure of medical *facilities* (e.g., *Lathrop v. HealthCare Partners Medical Group* (2004) 114 Cal.App.4th 1412 [8 Cal.Rptr.3d 668]; *Kotler v. Alma Lodge* (1998) 63 Cal.App.4th 1381 [74 Cal.Rptr.2d 721]), does not change this view.

Plaintiffs would distinguish *Chosak, supra,* 153 Cal.App.4th 549, on the ground that Stevenson was not *lawfully* practicing a healing art. Earlier this was couched as a claim that she was acting outside the scope of professional services, "in that: (1) she was not receiving the supervision required by law; and (2) she did not disclose to Mr. and Mrs. Prince that she was not licensed—a disclosure required by law. [¶] Because of these two statutory violations, Stevenson did not commit the 'professional negligence' to which section 3333.2 applies."

■ Stevenson allegedly violated a statute requiring that registrants "shall inform each client or patient prior to performing any professional services that he or she is unlicensed and is under the supervision of a licensed professional." (Bus. & Prof., § 4996.18, subd. (h) [former subd. (e)].) "Shall" is "mandatory." (*Id.,* § 19; see *Governing Board v. Felt* (1976) 55 Cal.App.3d 156, 162 [127 Cal.Rptr. 381].) But that does not mean Stevenson was not a health care provider, nor change the fact that she performed a mental health evaluation.

Plaintiffs assert that the disclosure statute equates to a "restriction" on Stevenson's ability to practice, and therefore she was not acting "within the scope of services for which the provider is licensed *and which are not within any restriction imposed by the licensing agency.*" (Civ. Code, § 3333.2, subd. (c)(2), italics added.) We reject this view for two reasons. First, the disclosure statute was not "imposed by" the Board. Second, the California Supreme Court has rejected a similar claim in a case involving the identical language in a different MICRA statute (Bus. & Prof. Code, § 6146, subd. (c)(3)): "Defendant argues that because sexual misconduct by a psychiatrist toward a patient has long been a basis for disciplinary action by the state's licensing agency . . . any cause of action which is based on such misconduct falls within the proviso, as a 'restriction imposed by the licensing agency.' In our view, this contention clearly misconceives the purpose and scope of the proviso which obviously was not intended to exclude an action

from section 6146—or the rest of MICRA—simply because a health care provider acts contrary to professional standards or engages in one of the many specified instances of 'unprofessional conduct.' Instead, it was simply intended to render MICRA inapplicable when a provider operates in a capacity for which he is not licensed—for example, when a psychologist performs heart surgery." (*Waters v. Bourhis* (1985) 40 Cal.3d 424, 436 [220 Cal.Rptr. 666, 709 P.2d 469].)

Plaintiffs also call Stevenson's actions *fraud*, but that label does not show that injury was caused by an intentional tort falling outside of MICRA's protections. (Cf. *Perry v. Shaw* (2001) 88 Cal.App.4th 658 [106 Cal.Rptr.2d 70] [doctor performed procedure beyond patient's consent; MICRA did not apply to battery claim].) More importantly, the complaint pleads *professional negligence*. A party cannot resist summary judgment by raising issues outside the pleadings. (See *Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 829 [134 Cal.Rptr.2d 162] [plaintiff asserted fraudulent inducement claim on appeal, but "only negligence-type facts have been pleaded, and at the summary judgment stage and an appeal thereof, the plaintiff is not entitled to assert new causes of action without obtaining leave to amend"]; *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381–382 [282 Cal.Rptr. 508].)

Plaintiffs also produced facts which arguably show that Stevenson was not receiving the correct type of supervision. (Bus. & Prof. Code, § 4996.20, subd. (b).) An applicant must complete "at least 3,200 hours of post-master's experience, supervised by a licensed clinical social worker." (*Id.*, § 4996.20, subd. (a).) "Supervision shall include at least one hour of direct supervision for each week of experience claimed. Not less than one-half of the hours of required supervision shall be individual supervision." (*Id.*, subd. (b).) Stevenson received group supervision, but apparently not individual supervision. Although this may mean those hours might not count towards her ability to take a licensure test, that does not change the nature of the services she provided.

■ MICRA applies to Stevenson, thus, plaintiffs have been compensated by the Kaiser settlement and have no triable issues.

We need not address whether *Sutter's* status means its employees—including Stevenson, as well as the physician who allegedly released decedent—are protected by MICRA, nor whether the failure to join Sutter in the arbitration bars their claims.

## DISPOSITION

The judgment is affirmed. Plaintiffs shall pay Sutter's and Stevenson's costs of this appeal.

Nicholson, Acting P. J., and Butz, J., concurred.